## Patrick H. O'Donnell, Adm'r, etc., v. Lake Shore & M. S. Ry. Co. et al.

1. INSTRUCTIONS—*Duty of the Court in Considering the Propriety of an Instruction to Find for the Defendant.*—A motion to instruct the jury to find the defendant not guilty. is in the nature of a demurrer to the evidence, and the court, in passing on that motion, is limited to determining whether there was or not evidence, which, if true, reasonably tended to support the plaintiff's case. It is not within the province of the trial court, nor of the Appellate Court on appeal, to weigh the evidence or pass on the credibility of the witnesses.

**Trespass on the Case.**—Death from negligent act.   Error to the Circuit Court of Cook County; the Hon. Charles A. Bishop, Judge, presiding.   Heard in this court at the October term, 1901.   Reversed and remanded.   Opinion filed March 6, 1902.

**Statement.**—The plaintiff in error sued the defendants in error for negligently causing the death of his intestate, Rose Krematig.   At the conclusion of the evidence for the plaintiff, the court, on motion of the defendants, instructed the jury to find the defendants not guilty, which the jury did, and judgment was entered for the defendants.

The main question presented for decision is, whether there was evidence reasonably tending to support the plaintiff's case.   The main tracks of the defendants cross Polk street, an east and west street in the city of Chicago. The main tracks run north and south; the most easterly of the main tracks in question is the in-bound or north-bound track, and next west of that track is the out or south-bound track.   East of the north-bound track is what appears to be another main track, and east of that is a switching track. There are other switching tracks west of the two main tracks first above mentioned, so that in all, there are ten tracks crossing Polk street.   The crossing of Polk street by the tracks is planked.   At the east and west sides of the crossing are gates.   At the northeast and southeast corners of the crossing are freight houses of the L. S. & M. S. Ry. Co., at southwest corner of the crossing is a freight house of the Rock Island & Pacific Railway Co., and at the northwest corner of the crossing, and north of Polk street, on ground belonging to the railroad companies, is a turn-table. Pacific avenue is the next north and south street east of the railroad tracks and, as appears by a map in evidence, is about fifty-four feet distant from the tracks.   Sherman street is the next north and south street west of the tracks, and lies immediately west of the turn-table above mentioned. The distance between the east and west gates is about 200 feet.   The width of Polk street is about forty feet.   The gates were operated by a man in a tower, situated on the south side of Polk street and west of the tracks, at the north

end of the freight house of the Chicago, Rock Island &
Pacific Railway Co. There were two flagmen, one at the
east side and the other at the west side of the crossing.

The deceased lived on Polk street, about half a block east
of Pacific avenue. The evidence tends to show that April
27, 1898, in the day time, Rose Krematig, plaintiff's intestate,
walked south on the east side of Sherman street till she
came to the corner where the turn-table is, and crossed that
corner onto the right of way of the railroad companies, but
the evidence is not clear on this point. The evidence tends
to show that about the time the deceased got on the cross-
ing a passenger train of the C., R. I. & Pac. Ry. Co. was
approaching Polk street from the south on the north-bound
track, and that, at the same time, a L. S. & M. S. train,
composed of an engine and two empty cars, was moving
south a short distance north of Polk street on the south-
bound track, and that, at the time of the accident, there
were cars standing west of the main tracks and about six
feet north of the crossing. Fagan, the west side flagman,
testified: "She (meaning the deceased) couldn't see the
engine; she could see the smoke stack and hear the bell;
could see over the top of the cars as they came along."
There is also evidence tending to prove that the gates were
open. John Martin testified that he approached the cross-
ing from the west on the north side of Polk street, and
when he arrived at about the northwest corner of Polk and
Sherman streets he saw Mrs. Krematig about 150 feet north
of the crossing on Sherman street; that he went onto the
crossing; that the gates were open; that after he got on the
crossing he was signaled by a flagman on the east side of
the crossing that a Rock Island train was coming from
the south, and that he stopped about the third track from
the west side; that while he was standing there Mrs. Krem-
atig passed him, in a minute or a little more after he
stopped, and went southeast of him about twenty-five feet,
to about the middle of the crossing, and stood there talking
to some one; that the regular passenger train was coming
from the south and was about 100 yards south of the crossing

when the flagman signaled him, and that he, witness, did not see the switch engine until Mrs. Krematig got to the crossing, and then it passed south; that he did not see the deceased struck, and the last he saw of her she was under the engine. That the south-bound engine struck and killed plaintiff's intestate is not controverted. This witness also testified that the crossing is a very dangerous one, and trains pass over it very frequently, and a good many people and teams. Fagan, the west side flagman, testified that just prior to the accident he left his place and went south a short distance to attend to a call of nature; that the gates were down before he left the crossing; that when he returned, after an absence of about ten minutes, and before the accident, the gates were down and the tower bell ringing, and he saw the deceased running; that she was then about half way between the west out-track and the west gate, and that he saw her struck; that she was going on what you would call a trot or run. This witness testified that when the accident occurred he was on the south edge of the crossing, near the west gate.

Plaintiff, in support of a count of his declaration, put in evidence an ordinance of the city of Chicago prohibiting switch engines, and cars being moved in making and breaking up trains, in any district within the city, from moving at a greater rate of speed than nine miles per hour. Fagan testified that the south-bound switch engine " had two coaches attached, suburban cars, empty Lake Shore cars, and it put them back in the coach yard, north of the crossing, to the west of the main track, in the yard generally used for cleaning coaches, getting them ready to go out." This was after the accident. Martin testified that he had been in the railroad business a few years; that he had run as baggageman and brakeman, and had run a freight train a few months as conductor, and that the south-bound switching engine was running, at the time of the accident, at the rate of about fifteen miles per hour.

WM. ELMORE FOSTER and JOHN C. STETSON, attorneys for plaintiff in error.

PAM, CALHOUN & GLENNON and W. T. RANKIN, attorneys for defendants in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

We are of opinion that the evidence tended to support the plaintiff's case. The witness Fagan, while testifying that the gates were down when he left his place, and that they were down when he returned, did not, and from where he was, perhaps could not testify as to whether they were up during the time he was absent from his place, and Martin testified that they were up when he went on the crossing, and stopped about the third track from the west side, which was only a few feet from the most westerly track, and that the deceased passed him. When asked how long he had stood where he stopped, when the deceased passed him, he said, "It might not be a minute, it might not be more than a minute," leaving it to be inferred that the deceased came on the crossing while the gates were open, as the witness said they were when he got onto the crossing. Another witness testified that he had just crossed Pacific avenue, driving a team toward the east gate, when the gates went down, and that he then saw the deceased on the crossing. If the gates were open when the deceased walked onto the crossing, that fact was an indication to her and others that they might safely cross the tracks. We think it was a question proper to be passed on by the jury, whether the gates were open when the deceased walked onto the track. In addition the evidence tends to prove that the view of the approaching south-bound engine, which struck the deceased, was obstructed, and that the engine and its attached coaches were moving, in violation of the city ordinance and the statute (Hurd's Stat. 1901, C. 114, parag. 87), at a prohibited rate of speed. We do not agree with the contention of counsel for the defendants, that there was only a scintilla of evidence for the plaintiff. We think the evidence material as reasonably tending to support the plaintiff's case, and that the case should have been submitted to the jury. The motion to instruct the jury to find the defendants not guilty, was in the nature of a demurrer

to the evidence, and the court, in passing on that motion, was limited to determining whether there was, or not, evidence which, if true, reasonably tended to support the plaintiff's case.    It was not within the province of the trial court, nor is it within our province on this appeal, to weigh the evidence, or pass on the credibility of the witnesses. Roberts v. C. & G. T. Ry. Co., 78 Ill. App. 526, and cases there cited.

The evidence for the plaintiff in the present case is as strong, if not stronger, than was the evidence in Siddall v. Jansen, 168 Ill. 43; for the plaintiff in that case, and the trial court in that case, as in this, took the case from the jury, which action the Supreme Court held was erroneous.

We find no error in the rulings on evidence.    The judgment will be reversed and the cause remanded.